Good morning. May it please the Court, my name is Leslie Lienemann. I represent the appellant, Anthony Knight. I ask to reserve two minutes for rebuttal. We are here this morning on appeal of the grant of summary judgment in a case involving the Family and And I just want to go over some of the facts that I think are most pertinent to the legal argument. Anthony Knight was employed by Cambria for a period of about a year, and he began to experience some emotional distress as a result of loss of his father. So at the suggestion of his manager, Justin Wolfe, he sought and was approved for leave under the FMLA. Prior to his leave, he had regularly worked overtime. Cambria admittedly terminated Knight's leave before the end of his, terminated his employment before the end of his FMLA leave. Wolfe, the same manager who had suggested he take the FMLA leave, suggested that he be terminated. Cambria admits that it had never considered terminating his employment for any reason prior to his taking leave. Cambria offers no documentation in support of its defense of a reduction in force or elimination of position, nor any discussion of reasons for terminating of Knight or a need for a reduction of staff. Cambria offers no evidence reflecting reduction in workload requiring reduction in staff. And Knight's co-worker, Michael Giese, who sometimes directed his work, testified that while Knight was on leave, the workload neither increased nor decreased, but simply shifted. Now, of course, there are many other facts in the record, but I think that these facts highlight the error of the court in granting summary judgment. The Family Medical Leave Act, as the court is well aware, has a number of prohibitions and a number of claims that can be brought. One of them has been referred to as either entitlement or interference. But essentially, the concept is that an employee has certain entitlement under the FMLA, one of which is to be returned to a comparable position at the end of the leave. Under this type of claim, interference or entitlement, there is no need to prove any intent by the employer. That is a critical error that this court must review, and that we believe requires... But don't the regs say that an FMLA, an employee receiving FMLA right has no greater right to reinstatement if laid off during the leave? Yes, it does. Pertinent to the work reduction in force issue. Yes, and what's... You've got to win that this is a sham reduction in force before that argument has any real weight, it seems to me. Yes, so in an interference claim or an entitlement claim, the employer has a defense. If they fail to return the employee to employment at the end of the leave, if they are able to prove that the position would have been eliminated in any event, in other words, regardless of the leave, then they have a defense. But what's key is, again, they have the burden of proof on that defense, not the plaintiff. This is important because of the district court's application of the McDonnell-Douglas analysis to both his interference claim and his retaliation claim. One of the other provisions of the FMLA allows an employee to make a claim of retaliation. In other words, the position was eliminated in retaliation for his taking a claim. Under that type of a claim, intent is an issue. The McDonnell-Douglas analysis was developed under Title VII as a method of proving intentional discrimination. And so it makes sense to apply a McDonnell-Douglas analysis to a claim that requires showing of intent. But under the FMLA in an entitlement claim, there is no requirement that the plaintiff show intent. And so application of the McDonnell-Douglas analysis to that claim is inappropriate and places a higher burden on the employee than the FMLA requires. This Court addressed this issue. Let me ask you this. And I'm not saying necessarily these are the facts here, but let's assume for a second that it is. If they put him out on FMLA leave and subsequently discovered that the work could be absorbed by other people and they didn't, quite frankly, need him anymore and so then terminate him, would that support an interference claim or not? That is the discussion I was just going to talk about. So you're right-tracking with me and I appreciate it. I'm looking at a case that this Court decided en banc last year in 2025, the Huber case, because I think although the facts are not exactly on point, the analysis I think is critical. And in Huber, the Court noted that it is the burden of the employer to show that the employer would have discharged the employee regardless of the leave. And it says, but not when the termination is connected with their FMLA leave. In other words, if there is a connection between the leave and the termination, the employer does not need its defense. And I think this particular... I don't know how you confused me with that answer. It sounded... What is your interpretation of Huber, which of course was a thing, hardly a unanimous decision, but has clear holdings? Yes. So I think that the way that I apply Huber to this case is that if there is a connection between the employee's leave and the termination while on leave, the employer doesn't need its defense. And here... A connection between what? Between the leave, between the taking of the leave and the termination. A factual connection. But the hypothetical is the termination is because his position can be eliminated. That's what I'm addressing right now. So I think what you're saying is you think there would be a connection in my hypothetical because they determined they didn't aid him because of the leave. Is that your argument? Yes. I think that in a case... What if it isn't a because? There's... What if they've just reassessed the workforce or there's a change in demand for the services? If those facts were present in this case, we would have a different analysis. But those... There's no evidence of that in this case. Excuse me. There's some evidence all over the place. But certainly there's evidence that... You can't just dismiss the reduction in force testimony positive. That goes to the question of the burden of proof. It does. Well, it may or it may not. Not if the evidence is... It doesn't have to be overwhelming, but it has to be strong enough to permit the inference. No, it has to... On summary judgment, if the employer bears the burden of proof on a defense, they carry the burden of proof. It's not enough to articulate evidence. It must be enough to eliminate any possibility. Yes. And so the evidence that we believe is contrary is the testimony of the person doing the work, which was that there was not a greater workload or a lesser workload. After the... Many months after the fact. No, the... After the lawsuit started. That was his testimony in deposition, yes. But the leave started in February and the termination was in March. So in February at the time that Mr. Knight took leave, right up until then he was working overtime. There has been no documentation showing that there was a lack of work. There is only deposition testimony that is remarkably consistent with the defense in this case. That, well, even though we did not have any documentation of lack of work, declining work, or consideration of a reduction in force, consideration of elimination of position, we just decided that while he was gone, after we reapportioned his work, to let him go. That is as much as the defendant has evidence of in this case. And consider... I'll give you an interview of it. Also consider the lack of evidence. If a jury says, look, an employer that is doing a legitimate reduction in force typically has documentation of a consideration by a number of people, whether that's emails, discussions, identifying... Who says this? You... What's the source for that? Did you say a court or... If a jury considers the explanation offered by the defendant, which is that this was a reduction in force or elimination of position, they are entitled to test the credibility of that by looking for any indicia of evidence that they would consider to be typical. And we have testimony from one of the chief officers of the company, Christine Phelps, saying typically when this employer did reductions in force, it did have those formalized processes and documents. But they're absent in this case. Then that's a factual question that I have. And the difference between a reduction in force and a decision to eliminate one or two people within a department. And I wasn't sure that the testimony, and you can tell me if I'm wrong, but I wasn't sure that the testimony about a generalized reduction in force that has to go through a process to determine which folks are eligible or which we should be looking at necessarily applied to, you know, in this particular department, we've just got too many people. Or the workload has gone down. Is that a distinction that the factual record makes? I think it does. For one thing, there is no evidence that the workload went down or that there are too many people. But also... Well, they... All right. But they posted a replacement. There is evidence of the... With a change of responsibilities and title and so forth. That's exactly what you do in a reduction in force. And it doesn't come out of the reduction in force playbook in some treatise. It's... Every business has to be run. In answer to the question, they did generate a notice under the Older Workers Benefit Protection Act that would have been required in a reduction of force. Now, it's factually inaccurate. There are lots of credibility issues with it. But they can't sort of have it both ways and say, it either was a reduction of force or it wasn't. So is that the one piece of evidence that you're saying, excuse me, is in the record that would indicate they were treating it as in a reduction in force? Is that what you're saying? I think a jury could conclude that they generated it so it would look like a reduction in force. Was there testimony by management that this was not an official reduction in force? There was testimony that it was a reduction in force, that the only document generated is the Older Workers Benefit Protection Act form, which as indicated in our briefing is wildly factually inaccurate. I would like to reserve the remainder of my time for rebuttal. Thank you. Thank you. Mr. Alter. Good morning, and may it please the Court, Counsel. Mr. Knight was by all accounts a well-liked and a valued employee who had performed well in his job for about a year and a half while working for Cambria. Cambria made the difficult decision to eliminate his position in March of 2024 due to the need to reduce costs and due to a projected continued sales decline. What's unfortunate is not illegal. I want to first highlight one inaccuracy in the record that Mr. Knight's counsel raised. She claimed that it was Mr. Wolfe who terminated or decided to terminate Mr. Knight. If you look at Knight's Appendix 75 and Cambria's Appendix page 43, which is Mr. Wolfe's declaration, those make clear that Mr. Wolfe had a conversation with Mr. Gruszkowiak. Mr. Wolfe informed Mr. Gruszkowiak that they could make do with one process engineering tech position instead of two, and that was the extent of Mr. Wolfe's involvement in the decision. Let me ask you, is the so-called reduction in force solely this person, Mr. Knight? I think reduction in force is maybe a misnomer in this case. It was a one-person position elimination. This was not a large 500-employee reduction in force where all sorts of graphs and spreadsheets and et cetera are created in order to make decisions. So what evidence was there that there was this planned, that there was this downturn, and there was this planned reduction in force versus my hypothetical, which I think may be closer to the truth here, which is they put him out on FMLA leave and decided that other people could absorb the work and let him go. And then the question becomes, is that interference or not? Let me answer your question in two parts. The first part, when, where on the record is there evidence of this sales decline and the need to reduce costs? Knight Appendix 76, page 5 of Mr. Gruszkowiak's deposition. Knight Appendix, page 75, at page 23 of the deposition. Both are undisputed. Mr. Knight has pointed to a chart that his counsel created about how much overtime he worked prior to his leave. That doesn't have anything to do with the sales decline. It doesn't show whether he was busy. It doesn't show how many hours were productive hours. And if you actually look at that chart, seven out of the nine pay periods prior to his employment ending, he was working fewer than 80 hours in the pay period. That's where the evidence is of the sales decline and projected sales decline that prompted the need to reduce costs where possible. As to the second part of your question, Your Honor, I think it was Judge Loken who said, where is the because? And there is no because in this case. Mr. Knight has the burden on his interference claim to show causation, a connection of some sort, between his taking of FMLA leave and the decision to end his employment. Let me ask you this. If you heard the discussion I had with Ms. Leinemann, if the evidence that you described, that there was this downturn and a desire to save costs, occurred while he was out on FMLA leave, and then it gets very close to my hypothetical, they determine, Ms. Leinemann's position is that that makes it because, in other words, they discovered they didn't need him because he was on FMLA leave, and she says that gives the because. Do you agree with that or not? And do you have any case law to help us? Sure, Your Honor. The answer is no, I don't agree with that. The reason why I don't agree with that is because that essentially imposes a strict liability standard on employers who lay off employees amidst an FMLA leave. And this Court has expressly rejected that strict liability standard I believe it was in Stallings, in Thornberry, and it may have also been addressed in the Huber case. If there is no connection, actual connection, between the decision to end employment and the FMLA leave, then there is no FMLA interference claim. It is not enough that an employee is on FMLA leave and is terminated before his return to work. Is there any record evidence of discussions about the sales declines and the impact on this particular department prior to him taking FMLA leave? Yes, Your Honor. How far in advance of his taking leave were there discussions about this concern? There were discussions at the end of 22 and the beginning of 2023. That's on pages 75 and 76 of the addendum. I think on pages 23 and 25 of the relevant deposition testimony. Those conversations were not specific to Mr. Knight. Those were Cambria recognized a need to reduce costs. There were discussions, verbal discussions, about reducing labor costs and maintaining must-need positions and trying to reduce labor costs, you know, if there was ability to do so without. Were there any discussions about this? Was he a process engineer? I don't remember the exact term, but was there any discussions about that particular, I'm going to call it a department or job titles, that this decline in sales will directly impact this particular job set more than others? I don't have deposition sites for that specific, but I know that there were generalized discussions about the need to reduce costs, including from Mr. Kruskowiak, who was in charge of this department. He supervised 70 employees who were. . . How many employees? He supervised directly and indirectly 70 employees. And he had discussions, and it's in his deposition testimony, about the generalized need to reduce labor costs where at all possible. The decision to reduce one of these two process engineering. . . He was the one who couldn't remember the names of the people he was responsible for directing. His deposition testimony to me was shocking. Your Honor, I am not sure that that correctly frames his deposition testimony. I recognize that there were inconsistencies among immaterial issues, issues not at all related to the decision to select Mr. Knight. Like who replaced him and so forth? There was no replacement for Mr. Knight. His job was permanently eliminated. Your Honor, also. . . You know, it seems to me that maybe needs a jury trial. I don't know. Your Honor, I think it has the opposite effect. The fact that Cambria made the decision to cut costs, it did so by eliminating one position and it never filled that position, is evidence that Cambria has been consistent throughout its whole narrative in this case. Well, if there's no evidence that there was discussion about this particular set of jobs, I think there was only one engineer and one engineer junior. If there wasn't discussion about that particular job or jobs, why wouldn't there be an inference that, well, gosh, Mr. Knight is gone and it looks like now we don't need him, let's pick him as the one to eliminate? Would that be a connection between FMLA leave and termination? First, Your Honor, there is record evidence of the discussion to select Mr. Knight's role. It was a conversation between Mr. Gruskowiak and Mr. Wolfe. Mr. Wolfe. Before Mr. Knight left on FMLA leave? I'm not sure exactly the date of that conversation. I believe it was after he had already begun leave. And the answer to Your Honor's second question is, no, that is not an evidence of a connection between Mr. Knight's use of FMLA leave and Cambria's decision. Cambria's decision was based on the need to reduce costs and its specific selection between Mr. Gies and Mr. Knight was based on seniority. Neither was an FMLA-related decision. There is no record evidence in this case whatsoever that Mr. Knight's use of FMLA played any role whatsoever in Cambria's decision-making process. The fact that he was unfortunately had his job eliminated while he was on leave is the only evidence of a connection to his FMLA leave, and this Court has routinely rejected that as sufficient evidence of a connection in interference and in a discrimination or retaliation claim. The relevant measuring period for that type of causal connection is the request to take leave and the decision, which in this case was more than six weeks. I want to briefly address Your Honor's question about the job posting that was posed to Mr. Knight's counsel. Cambria Appendix 2 is the declaration of Jason Campbell that helps explain that issue. That was a posting that was permanently on Cambria's website. They call it an evergreen posting. It was posted months before FMLA was even requested. There were zero interviews. There were zero hires. That is not evidence whatsoever of any connection between Mr. Knight's FMLA use and his position elimination. The fact that he saw it and believed that they were posting for his role is A, not true, and B, irrelevant. There was also a question about the testimony of Ms. Phelps. Ms. Phelps was in HR and Mr. Knight's counsel suggested that Cambria violated its policy by not documenting the reduction in force in this case. Ms. Phelps testified that typically when there is a reduction in force, then managers can document some of the performance concerns, et cetera, that come into play in the decision. Here, this is a one-person position elimination. Mr. Groskowiak and Mr. Wolf are consistent that their conversations about this one-person decision were verbal. Ms. Phelps also testified that the conversations that would typically happen after that decision is made that involve HR were also verbal. So this is not one of those larger RIF cases where you would expect that there is a mountain of evidence, spreadsheets, et cetera, about who should be selected, et cetera. This was a one-person decision, and the testimony is undisputed that it was made verbally. And Mr. Knight's attempt to characterize this as a larger reduction in force in order to allege then that there is a lack of documentation and then allege pretext is misconstruing the nature of the decision in this case. It's unfortunate, but Cambria made the effort to reduce costs. It eliminated one role. It did so based on seniority. And there is no connection whatsoever between that decision-making process and Mr. Knight's use of FMLA leave. Opposing counsel said that he was working overtime prior to going on FMLA leave, and you mentioned that his prior pay, I guess paid stub or something, reflected 80 hours for the time period. Is that 40 hours of work and 40 hours of homework or overtime, or is that 40 for two weeks? 40 for two weeks, Your Honor. Cambria told a consistent story in his depositions. That story made clear that his decision had nothing to do with Mr. Knight's use of FMLA leave. The district court in this case got it exactly right. Consistent with this Court's en banc decision in Hoover, the real reason for Mr. Knight's position elimination had nothing to do with his FMLA leave. And absent evidence to the contrary, I ask that this Court affirm. Thank you. Rebubble. To answer the Court's question, Mr. Knight's leave began on February 8th. For the pay period ending February 4th, his pay reflects 8.25 hours of overtime. I think that the discussion of the Court with opposing counsel highlights the problem of dismissing this case on summary judgment, which is that all of the evidence cited to is in the deposition of John Griscoiac. And that raises the issue of the errata sheet, which we haven't talked about. Although the Eighth Circuit has not been exactly clear about how we treat errata sheets, the Minnesota District Courts have arrived at if there is a material change in testimony on an errata sheet, that is a credibility issue to be determined by the jury. And the extent to which the employer is relying on the testimony of a man whose testimony can be characterized, I think, most favorably as not a very good memory of the events or the people involved, and or characterized against the party who was the burden of proof here, which is the employer. As I read the District Court's opinion, however, the Court didn't rely on any of those bits of testimony that were the focus of the errata sheet. Is that correct? I don't think that it's a question of whether it was that testimony the Court relied on. It's about whether his testimony as a whole can be relied on, given the obvious credibility issues and lack of memory of this witness. So you're not focused on the specific topics that were changed in the errata sheet. You're just talking about a general credibility problem. Yes. And I think it's important when we're talking about a remarkable synchronicity of the reduction of one position of the person who happens to be out on leave when they acknowledge that that person was not discussed before as someone who needed to be terminated, and there was no specific reduction of force, even a reduction of a position in that position. It happened exactly as Judge Grunder described. He goes out on leave, and they say, hey, he's out on leave. We can do without him. That is a connection that the jury can and should consider. And so we ask the Court to overturn the grant of summary judgment and allow the jury to make these very significant credibility determinations. Thank you.